The opinion of the Court was delivered by
DargaN, Ch.
The first question made under the appellants’ first ground of appeal depends upon the construction of the decree of 1836, in the case of Thaddeus Street and Daniel Boinest, against the widow and children of Timothy Street, deceased. That decree is in the following words:
“ 1. The report of the Master in this case having been read, it is ordered that the same be confirmed. It is further ordered and decreed, that the contract for the sale of the house and lot at the corner of East Bay and Broad street, in the proceedings set forth, be confirmed, and that the Master, on compliance with the terms of sale, do execute titles therefor to the said Benjamin Smith. !
“ 2. It is further ordered and decreed, that the two lots in Pinckney-street and the two lots in Meeting-street be sold by Thaddeus Street, either at public or private sale, with the approbation of the Master of this Court, and that the Master do execute titles therefor to the purchasers, provided he approve the price and terms of sale agreed on.
“ 3. It is further ordered, that the two stores on East Bay-street, the warehouse in Gillon street, and the lot and dwelling house in Queen-street, be sold by Thaddeus Street, at such time hereafter as by himself and Mrs. Street, the widow of Timothy Street, may be deemed expedient, and that the Master do execute titles therefor to the purchaser, provided he approve the price and terms of sale agreed on.
“4. It is further ordered, that the proceeds of the sale of the house at the corner of East Bay and Broad streets be partitioned as follows: viz. one third part thereof paid to Thaddeus Street, one third part thereof to Daniel Boinest, and the remaining third part thereof to the Master of this Court, for the dis- *249 tributees of Timothy Street, deceased. That the proceeds of the sales of the lots in Pinckney-street be also partitioned equally between Thaddeus Street and the distributees of Timothy Street, and that the moiety belonging to the distributees of Timothy Street, together with the proceeds of the lots in Meeting-street, be paid to the Master of this Court.
“ 5. It is further ordered, that the Master do invest, in his official name, the amount coming into his hands from the sales aforesaid, on account of the distributees of. Timothy Street, in such manner as may be agreed on by himself and the administrators of Timothy Street, to be held for the use of the legal distributees of Timothy Street, and transferred to the parties who may be decided to be entitled thereto.
“ 6. And it is further ordered, that on the sale ojf any 'part of the residue of the real estate in bill mentioned, the proceeds thereof be partitioned as follows : viz. one half thereof to Thaddeus Street, and the remaining half to the distributees of Timothy Street, deceased, to be paid to the Master of this Court, and distributed among the representatives of Timothy Street, by the future order of this Court.
(Signed) HENRY W. DeSAUSSURE.”
January 23, 1836.
From a proper interpretation of this decree, does it appear that the Master was directed to invest the shares of the heirs of Timothy Street in the proceeds of all the sales ordered in the decree 1
On the"part of the appellants, it is contended, that there was no order for the investment of the proceeds of the sale of the two stores on East Bay, the warehouse in Gillon-street, and the dwelling house in Queen-street. To sustain this view, reference is made to the sixth or last clause of the decree, which, it is said, relates only to the lots which have been mentioned above; and this clause decrees a distribution, and orders the shares of the distributees of Timothy Street to be paid to the Master, but does not order an investment.
*250 It was for the share of the heirs of Timothy Street in these lots that the defendant, Eliza Laurens, is made liable by the Circuit decree. And the argument is, that as E. It. Laurens, the Master, was not ordered to invest this fund, he has committed no default or devastavit, for which Eliza Laurens, as his surety, would be liable. This, I think, would be giving a narrow and erroneous construction to the decree. The first, second and third clauses direct a sale of all the real estate belonging to the parties that are mentioned or described in the pleadings. And by the fifth clause it is “ ordered, that'the Master do invest, in his official name, the amount coming into his hands from the sales aforesaid, on account of the’ distributees of Timothy Street.” It would be illogical, and a perversion of language, to say that the part of the order quoted, which directed an investment, did not relate to all the sales which had been previously ordered.
If this be the true construction, it is asked, for what purpose was the sixth clause intended ? This question admits of an easy and satisfactory solution.
An attentive consideration of the decree will show that its objects were three-fold. The first object was to order a sale; the second was to effect a distribution; and the third was to provide a proper investment and security of the share of the heirs of Timothy Street, who were infants. The fourth clause directs a distribution of all the lots which had been ordered to be sold in the three preceding clauses, except the two stores on East Bay, the warehouse in Gillon-street, and the dwelling house in Queen-street. This is followed by the fifth clause, which orders the Master to invest, in his official name, the amount coming into his hands from the sales aforesaid, (that is, the sales which had been previously ordered,) on account of the distributees of Timothy Street. This is followed by the sixth clause, which, without modifying or contradicting in any manner the previous parts of the decree, simply decrees a distribution of the proceeds of the sales of the two stores on East Bay, the warehouse in Gillon-street, and the dwelling house in *251 Queen-street, which had not been done in any previous part of the order. The Court is of the opinion that the decree of 1836 admits of no other reasonable or consistent interpretation.
Having arrived at this conclusion, it follows, that by the terms of the decree, the Master was bound to invest the share of the heirs of Timothy Street in the proceeds of all the sales ordered by the said decree. This he has not done; and the consequence is, that the shares of the heirs of Timothy Street are not now forthcoming, having been wasted by the said Master. And this default having been committed within those official terms for which Mrs. Eliza Laurens was his surety, she becomes liable to the distributees of Timothy Street, upon the principles laid down in the Circuit decree. I do not know that I could make these principles any clearer than I have in that decree. Suffice it to say, that this Court fully concurs in the views that I have therein expressed. And, in fact, they were not controverted on this trial.
But, admitting the construction of the decree of 1836 contended for on behalf of the appellants, and that the Master was not ordered to invest this fund by that decree, this Court is of the opinion that the Master committed a default, in not depositing the fund in Bank, as required by the Act of 1840. And this default having been committed during those official terms for which Mrs. Laurens was his surety, she becomes, on that account, liable. The Master did deposite the fund in Bank, in his official name, for the estate of Street, but he very soon after-wards drew it all out, on his own private checks. This course of the Master, to deposite money in Bank, and to draw it out again on his own private check, is not a compliance with the provisions of the Act of 1840, according to their true intendment. The object was to afford security to the parties, whose funds were in the keeping of the Master. But what security would it be to deposite, and then to check out the fund ? The Court would be wanting in the discharge of its duty, if a Master were permitted, by such subterfuges as this, to evade the plain intent of the law.
*252 Furthermore : Mr. Laurens not only checked out the funds of the estate of Timothy Street, which he had deposited, but he misappropriated them. An inspection of his Bank account, and other evidence reported by the present Master, convince us, that he not only checked out the fund, but that, in checking it out, he applied it to his own private use. And this devastavit, having occurred during the official terms for which Mrs. Lau-rens was his surety, that alone would make her liable. For it cannot be presumed that he paid over to his successor, (who in this instance was himself,) a fund which he is proved to have misappropriated, and applied to his own use, previous to the appointment of his successor. I need say no more on this branch of the case.
The second ground of appeal relates to the bonds of Mrs. Laurens to the Master, (Edward R. Laurens,) the amount of which, the appellants contend, should be allowed, as credits on the claim of the plaintiffs. For the evidence on this subject, I refer to Master Tupper’s report, where it is given in much detail. ■ The bonajides of these transactions is very questionable. There are not wanting circumstances to warrant the suspicion that they were not intended as securities for any estate in particular, but that they were designed to be applied and used as Mr. Laurens’ emergencies might require. The consideration of these bonds does not appear. They are all payable to Edward R. Laurens, Master in Equity, his successors in office or assigns. On each of them is endorsed an acknowledgment of payment in full by Mr. Laurens, which is without date. The bonds do not show upon their face to what estate they belong,. or for what purpose they were given. On the first bond, 10th January, 1841, is endorsed “ Eliza Laurens to Master in Equity, for estate of Street, $1,082 33.” On the second bond, dated 14th March, 1839, is endorsed “Eliza Laurens to Master in Equity, bond for $766 80,” with no indication of its belonging to any estate. On the third bond, dated 14th March, 1839, is endorsed “ Mrs. Eliza Laurens to Master in Equity, for Warren Andrews et ux, bond for 634 30.” The words “Warren An- *253 drewsetux” are stricken out, and there is no further explanation. On the fourth bond, dated 19th January, 1841, is endorsed “ Eliza Laurens to Master in Equity, for estate of McLeod, $2,207 58.” The words “ for the estate of McLeod ” are stricken out, and “ January, 1845, for estate Street,” are added. On the fifth bond, dated 19th January, 1841, is endorsed “ Eliza Laurens to Master in Equity, for estate of H. P. Holmes, $635.”
Mr. Laurens was the executor of Eliza Laurens. In a settlement of her estate, he presented these five bonds as demands against that estate, as being held by him for the estate of Street, together with many other bonds of a similar character, belonging, as was stated, to other estates, amounting, in the aggregate, to $61,911 67. For all of which, it' seems, Mr. Laurens, as executor, was allowed credit, on balancing his accounts.
Under these circumstances, the appellants seek to set up the amount of the five bonds before mentioned, against the claims of the plaintiffs pro tanto. It is admitted that these bonds cannot be regarded as investments for the estate of Street. But it is argued, that having been actually paid by Mrs. Laurens for the estate of Street, to Master Laurens, as his own successor, and after the expiration of the time when the former was bound as his surety, they should be allowed as payments, though they might not be allowable as investments.
If they were not intended as investments for the estate of Street, then their payment or non-payment is of no concern to that estate. The Court perceives no sufficient evidence to connect those bonds with the estate of Street. The fact that Mr. Laurens was allowed credit for the amount of those bonds, in the settlement of his mother’s estate, as due to the estate of Street, does not conclude the plaintiffs on this point. They were not parties to those proceedings. They can still deny, and do deny, that they had any concern or interest in those bonds. In this view of the case, the payment or non-payment of the bonds becomes, as to these parties, an immaterial fact. I will not enlarge further upon this subject, but ■ again refer to *254 Mr. Tupper’s report. This Court concurs, as the Circuit Court did, in the views therein expressed.
Such being the decision of this Court upon the second ground of appeal, the consideration of the other grounds of appeal becomes unimportant.
It is ordered and decreed that the Circuit decree be affirmed, and that the appeal be dismissed.
Johnston, Dunkin and Wardlaw, CC., concurred.

Decree affirmed.